IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| STANLEY BIRDSONG, ) | |
| ) | |
| Movant, ) | |
| ) | No. 3:22-cv-00020 |
| v. ) | Judge Trauger |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM OPINION AND ORDER**

The movant, Stanley Birdsong ("Birdsong" or "the movant"), has filed a pro se motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, (Doc. No. 1), as well as a supplemental motion to vacate sentence (Doc. No. 11). Birdsong, a federal prisoner, entered a plea of guilty and was sentenced by this court in Case No. 1:19-cr-00014-1. Respondent filed a response in opposition to the initial motion (Doc. No. 12), accompanied by a declaration from the counsel who represented the movant in his criminal case. (Doc. No. 12-1.). Respondent also filed a response to Birdsong's supplemental motion. (Doc. 17). For the following reasons, Birdsong's motion will be denied.

**I.     Background**

From April 25, 2018 through June 6, 2018, Birdsong made four sales of methamphetamine and a gun to confidential informants. A federal grand jury in Case No. 1:19-cr-00014-1 indicted the movant in June 2019 for conspiracy to possess with intent to distribute and to distribute a mixture and substance containing 5 grams of methamphetamine, in violation of Title 21, United States Code, Sections 841 and 846; in Counts Two, Three, and Six with possession with intent to distribute and distribution of a mixture or substance containing methamphetamine, in violation of

1

Title 21, United States Code, Section 841; in Count Four with possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c); in Count Five with possession of a firearm by a felon, in violation of Title 18, United States Code, Section 922(g); and with related forfeiture allegations. (Crim. Doc. No. 1). [1]

Birdsong agreed to plead guilty pursuant to a Federal Rule of Criminal Procedure 11(c)(1)(C) plea agreement with the United States. (Crim. Doc. No. 28, Plea Agreement). As part of the plea bargain, Birdsong agreed to plead guilty to Counts Two through Six of the Indictment. In exchange for the plea, the United States agreed to dismiss Count One, the conspiracy count, which carried a five-year mandatory minimum. (*Id.* at 59). The parties also agreed that the sentence imposed by the court would include a term of imprisonment of 108 months in the custody of the Bureau of Prisons, to be followed by 3 years of supervised release, and no fine. (*Id.* at 62).

Birdsong also admitted the following facts in the plea agreement's factual basis:

On April 25, 2018, in Giles County, Tennessee, a confidential informant bought 3.54 grams of methamphetamine for $150 from Petitioner. The methamphetamine was 35% pure, amounting to 1.23 grams of pure methamphetamine. During the course of the controlled buy, the CI asked, "What is the weight on it?" and Petitioner responded, "four." Petitioner also said, "I got that from my white boy in Athens…I got a good amount from them. This is the bottom of two zips. So, I got one more gram left that my cousin is going to buy, and then I'm going to go back to the mother***ers from Nashville. And it will be back sharded up." The CI responded, "not dust," referring to the powdery consistency of the methamphetamine.

On June 4, 2018, a different confidential informant bought 3.64 grams of methamphetamine and a Raven Arms, model P-25, .25 caliber semi-automatic pistol for $400 from Petitioner. The methamphetamine was 53% pure, amounting to 1.92 grams of pure methamphetamine. The Raven Arms, model P-25, .25 caliber semi-automatic pistol crossed state lines prior to Petitioner's possession. At the time of his possession of the firearm, Petitioner knew he had prior convictions for crimes punishable by more than one year imprisonment. Those convictions included a conviction on or about April 26, 2010, in Giles County, where Petitioner was convicted of felony aggravated robbery for which he was sentenced to 8 years; on or about May 21, 2010, in Giles County, where Petitioner was convicted of

---

[1] Citations to Birdsong's criminal docket in Case No. 1:19-cr-00014-1 will appear herein as "Crim. Doc. No."

felony possession of a weapon, for which he was sentenced to 1 year; and on or about 2006, in Giles County, where Petitioner was convicted of felony sale of marijuana, for which he was sentenced to 2 years, suspended.

On June 5, 2018, a confidential informant bought 2.809 grams of methamphetamine from Petitioner for $240. The methamphetamine was 95% pure, amounting to 2.668 grams of pure methamphetamine.

(*Id.* at 61).

Birdsong appeared before the court to enter his guilty plea on September 8, 2020. (Crim. Doc. No. 40, Plea Hearing Transcript, 114). The court placed Birdsong under oath and advised the movant that everything he said in court was under oath and could be used against him in a prosecution for committing perjury or making a false statement. (*Id.* at 116). The court verified that Birdsong understood the charges, that he had told "Mr. Brandon [defense counsel] everything [he knew] about the facts that support these charges," that Mr. Brandon had informed Birdsong "what the government would have to prove for you to be found guilty of these charges," that they had discussed "any possible defenses [that Birdsong] might have," that Mr. Brandon had "done all the investigation [Birdsong had] asked him to do," and that Birdsong was "satisfied with his representation … so far." (*Id.* at 118-119).

The court then explained the trial and appellate rights that Birdsong would waive by pleading guilty plea, engaging in a lengthy discussion with the movant on the issue. The court also confirmed that Birdsong understood both the plea agreement and the plea petition. (*Id.* at 121-22). The court also explained to Birdsong that the plea agreement was a binding plea agreement, and therefore, the computation under the guidelines was moot, and that the parties had no agreement as to the movant's criminal history. (*Id.* at 123).

Birdsong confirmed that no one had promised or suggested to him the sentence that the court would impose to get him to plead guilty, other than to say if the court accepted this plea

3

agreement, the court would have to give Birdsong the agreed-upon sentence. He further acknowledged that no one had put any kind of pressure on him, psychological or physical, to get him to plead guilty. (*Id.* at 126). The court also confirmed that Birdsong had not consumed alcohol, narcotics, hallucinogens, or medicines containing narcotics prior to the hearing. (*Id.* at 126-27). Birdsong informed the court that he was on a drug called Remeron, for anxiety and depression, that he had been on for approximately nine years. (*Id.* at 127). Birdsong also confirmed that he felt that his mind was "clear and [he knew] what [he was] doing." (*Id.*).

Birdsong agreed that the plea agreement correctly informed the court of what he had been indicted for. (*Id.* at 131). The court then went through each of the elements that the Government would have to prove in order for the movant to be found guilty of each charge. (*Id.* at 131-133). After explaining the elements of each charge to which he was pleading guilty, Birdsong confirmed that if he had gone to trial on each count, he believed that the Government could have proved those elements against him. (*Id.*) At the conclusion of the hearing, the court found that Birdsong had offered to plead guilty voluntarily, that he was "in full possession of his faculties and competent to plead guilty," and that he understood the nature of the charges to which his plea was offered. (*Id.* at 133-134).

Birdsong's sentencing hearing took place on January 8, 2021. (Crim. Doc. No. 41, Sentencing Hearing Transcript, 137). The court acknowledged the movant's mental health issues during the course of sentencing. (*Id.* at 146-147). Birdsong confirmed that he had read the Pre-Sentence Investigation Report or PSR, (*Id.* at 140), and said, "I believe I was sentenced fairly. I believe I was sentenced fairly, and I appreciate you accepting my plea. I understand I broke the law and I'm going to try to learn my lesson and just try to do better." (*Id.* at 145). Pursuant to the binding plea agreement, this Court sentenced Birdsong to a sentence of 37 months on Counts Two,

Three, Five and Six and 60 months consecutive on Count Four, a term of imprisonment that was 40 months below the bottom of Petitioner's 137-157 months' advisory Guideline range.

On January 13, 2022, Birdsong filed the instant Section 2255 motion, in which he raises several claims that his counsel was ineffective in his representation. Birdsong specifically alleges that counsel was ineffective for allowing him to plead guilty because he was not mentally competent. Second, the movant alleges that his attorney was ineffective assistance for failing to: communicate with Birdsong, investigate his mental state, request a competency hearing, and present evidence supporting a downward departure based on Section 5K2.13 of the United States Sentencing Guidelines. He further alleges that counsel failed to inform him that that his prior convictions did not qualify him as a career offender under the Guidelines, advise Birdsong of "the risk factors in pleading guilty" and the elements the government would have to prove at trial for each charged offense. The movant also claims that trial counsel was ineffective for failing to challenge the validity of Counts 1 and 4 of the indictment, challenge Counts 4 and 5 as duplicitous, review the Presentence Report with the movant or object to it, and file a notice of appeal.

In his supplemental motion, Birdsong makes many of the same arguments that he made in his initial motion, but also claims that counsel was ineffective for failing to move for Counts 1 and 4 to be dismissed on the basis of prosecutorial vindictiveness, for failing to challenge Count 1 on the basis that there was no evidence of a conspiracy, and by failing to challenge Count 4 on the basis that Birdsong did not use the gun in connection with a drug trafficking offense.

The court has jurisdiction under 28 U.S.C. § 1331. The motion is now ripe for the court's review.

## II. Standard for Reviewing Section 2255 Motions

A prisoner in custody under a sentence of a federal court may move the court to vacate, set

5

Case 3:22-cv-00020    Document 22    Filed 02/11/25    Page 5 of 20 PageID #: 152

aside, or correct his sentence on certain grounds, including that "the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). It is well established that, "[t]o prevail under § 2255, a defendant must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or jury's verdict" or "must show a fundamental defect in his sentencing which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Wright v. Jones*, 182 F.3d 458, 463 (6th Cir. 1999) (internal quotation marks omitted). In Section 2255 proceedings, it is the movant's burden to show his entitlement to relief. *See Potter v. United States*, 887 F.3d 785, 787-88 (6th Cir. 2018).

With the exception of a claim of ineffective assistance of counsel, a defendant procedurally defaults a claim by failing to raise it on direct appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998). Under the doctrine of procedural default, a defendant who fails to raise an issue on direct appeal may not raise that issue in a Section 2255 motion unless he can demonstrate (1) cause and prejudice to excuse his failure or (2) his actual innocence. *See Huff v. United States*, 734 F.3d 600, 605-06 (6th Cir. 2013). However, an ineffective assistance of counsel claim may properly be brought in the first instance in a motion to vacate sentence under Section 2255, regardless of whether or not the petitioner could have raised the claim on his or her direct appeal. *Massaro v. United States,* 538 U.S. 500, 504 (2003)(internal citations omitted). The Supreme Court in *Massaro* reasoned that requiring a criminal defendant to raise his or her ineffective assistance of counsel claims on direct appeal would not promote the procedural default rule's objectives of conserving judicial resources and respecting the law's important interest in the finality of judgments, because it would create the risk that defendants would feel compelled to raise an ineffective assistance of counsel claim on direct appeal before there had been an opportunity to

fully develop the factual predicate of that claim. *Id.* at 504-05. Birdsong's ineffective assistance of counsel claims are therefore not subject to the procedural default rule.

**III. Analysis**

Rule 8 of the Rules Governing Section 2255 Proceedings contemplates that a Section 2255 motion may be resolved by the district court without a hearing. Rule 8(a) provides in relevant part: "If the motion is not dismissed, the judge must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." *Id*. Rule 7 of the Rules Governing Section 2255 Proceedings permits expansion of the record with additional materials relating to the motion, such as letters predating the filing of the motion, documents, exhibits, answers under oath to interrogatories and affidavits.

"An evidentiary hearing 'is required unless the record conclusively shows that the petitioner is entitled to no relief.'" *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018) (quoting *Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012)). "Bald assertions and conclusory allegations" do not provide grounds to warrant requiring the government to respond to discovery or to require an evidentiary hearing. *Thomas v. United States*, 849 F.3d 669, 681 (6th Cir. 2017).

Here, considering the record before it, as well as the record in Case. 1:19-cr-00014-1, the court concludes that no evidentiary hearing is necessary prior to ruling on Birdsong's instant Section 2255 motion and supplemental motion. The court finds that Birdsong's Section 2255 motions fail because he has not shown that his counsel was ineffective.

As noted above, to obtain relief under 28 U.S.C. § 2255, a movant must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97

7

(6th Cir. 2003)). The movant "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process*.*" *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

The Supreme Court has noted that:

> Acknowledging guilt and accepting responsibility by an early plea respond to certain basic premises in the law and its function. Those principles are eroded if a guilty plea is too easily set aside based on facts and circumstances not apparent to a competent attorney when actions and advice leading to the plea took place. Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks. The opportunities, of course, include pleading to a lesser charge and obtaining a lesser sentence, as compared with what might be the outcome not only at trial but also from a later plea offer if the case grows stronger and prosecutors find stiffened resolve. A risk, in addition to the obvious one of losing the chance for a defense verdict, is that an early plea bargain might come before the prosecution finds its case is getting weaker, not stronger. The [prosecution's] case can begin to fall apart as stories change, witnesses become unavailable, and new suspects are identified.

*Premo v. Moore,* 562 U.S. 115, 124-25 (2011).

Birdsong has alleged that his counsel was ineffective in a number of ways. The court takes the allegations in order.

Birdsong initially argues that trial counsel was ineffective for permitting him to plead guilty because he was not mentally competent to do so, due to the fact that he was on the drug Remeron for anxiety and depression. He also alleges that trial counsel should have requested a competency evaluation for him before proceeding with the case.

A defendant may not be put to trial unless he has a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as a factual understanding of the proceedings against him. *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996); *Dusky v. United States*, 362 U.S. 402, 402 (1960). The competency standard for pleading guilty is identical to the competency for standing trial. *Godinez v. Moran*, 509 U.S. 389, 398 (1993).

Evidence of a defendant's irrational behavior, his demeanor at trial or at another court proceeding, and any prior medical opinions on competence to stand trial are all relevant in determining whether further inquiry by a trial court on a defendant's mental state is required, but even one of these factors standing alone, may in some circumstances, be sufficient to trigger a further inquiry into a defendant's mental fitness to stand trial. *Drope v. Missouri*, 420 U.S. 162, 180 (1975). There are no fixed or immutable signs which invariably indicate the need for a further inquiry to determine the fitness to proceed. *Id.*

A full competency hearing is necessary only when a court has a reason to doubt a defendant's competency to stand trial or to plead guilty. *Godinez v. Moran*, 509 U.S. at 401, n. 13. "The due process right to a fair trial is violated by a court's failure to hold a proper competency

9

hearing where there is substantial evidence of a defendant's incompetency." *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012). The question for a reviewing court is "[w]hether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." *Mackey v. Dutton*, 217 F.3d 399, 413-14 (6th Cir. 2000)(quoting *Williams v. Bordenkircher*, 696 F.2d 464, 467 (6th Cir. 1983)(additional quotation omitted)). "To trigger the court's duty to hold a competency hearing sua sponte, the defendant must tie his ailments to a deep breakdown in cognition, such that he lacked the ability to consult with counsel, assist in his own defense, or understand the proceedings against him[,]." *United States v. Hutchinson*, 831 F. App'x 195, 198 (6th Cir. 2020). For example, even if "all the evidence available" to the court suggests that a defendant functions at the upper-end of a mental deficiency, the defendant may nonetheless be competent to stand trial or enter a guilty plea. *Warren v. Lewis*, 365 F.3d 529, 534 (6th Cir. 2004).

Birdsong's competency claim fails because there is no evidence that should have raised a doubt with this court as to the movant's competency to plead guilty or to be sentenced. Birdsong was lucid at the plea and sentencing. He responded appropriately to this court's questions at both hearings and stated he understood what was happening. Petitioner made a lengthy statement at sentencing. The court also confirmed that the movant had not used alcohol, narcotics, hallucinogens, or medicines containing narcotics prior to the hearing. Although Birdsong informed the court that he was on a drug called Remeron, for anxiety and depression, he also confirmed that he felt that his mind was "clear and [he knew] what [he was] doing."

The only evidence that Birdsong offers to support his claim that he was incompetent to plead guilty was that he was on the drug Remeron for anxiety and depression.

Mental illness in and of itself does not equate with incompetency to stand trial. *See United States v. Davis*, 93 F.3d 1286, 1290 (6th Cir.1996); *See also Mackey*, 217 F.3d at 410-14 (upholding determination that habeas petitioner was competent, despite an earlier diagnosis of schizophrenia and an affidavit from the defendant's lawyer stating that his client "exhibit[ed] great difficulty in communicating and assisting with his defense."). *See also United States v. Miller*, 531 F.3d 340, 350 (6th Cir. 2008)("the bar for incompetency is high"). Anxiety does not automatically make a defendant mentally incompetent. *See e.g. United States v. Myles*, 70 F. App'x 814, 815–16 (6th Cir. 2003). Depression in and of itself also does not establish a criminal defendant's mental incompetency. *See e.g. Nowak v. Yukins*, 46 F. App'x. 257, 259 (6th Cir. 2002)(habeas petitioner failed to show that her depression amounted to mental incompetence that would justify tolling limitations period for filing habeas petition). The mere fact that a defendant has been prescribed psychotropic drugs also does not automatically establish that the defendant was not mentally competent. *See Otte v. Houk*, 654 F.3d 594, 600-01 (6th Cir. 2011).

Birdsong presented no evidence that he was not in possession of his mental facilities at the time that he pleaded guilty; therefore, any "after the fact" incompetency claim would be without merit. *See United States v. Calvin,* 20 F. App'x 452, 453 (6th Cir. 2001).

A defendant is not prejudiced by counsel's failure to seek a competency examination, absent an actual basis to support a claim of incompetency at the time of the proceeding. *See Bair v. Phillips*, 106 F. Supp. 2d 934, 941 (E.D. Mich. 2000). Because Birdsong has failed to establish that he was incompetent at the time of his plea, counsel was not ineffective for failing to seek a competency evaluation of the movant prior to the entry of his plea or prior to sentencing. Counsel's failure to request a competency hearing did not prejudice Birdsong, so as to support a claim of ineffective assistance of counsel, when a "reasonable judge, situated as was [this court] who

11

accepted defendant's guilty plea, would not have experienced doubt" about the movant's competency. *See Nemzek v. Jamrog,* 93 F. App'x 765, 766-67 (6th Cir. 2004).

Birdsong next alleges that his counsel was ineffective for failing to communicate with him, discuss the charges, conduct any pre-trial investigation, or advise Birdsong regarding the advantages and disadvantages of pleading guilty. Birdsong's allegations are unsupported.

When Birdsong entered his plea, he signed a plea petition under penalty of perjury. Paragraph 3 of the petition indicated that the movant had discussed his indictment with Mr. Brandon and paragraph 6 indicated that they had discussed his potential sentencing exposure. (Crim. Doc. No. 27, Plea Petition, 51-52). At the time of the change of plea, by signing the plea petition, Birdsong attested that defense counsel had:

> "done all the investigation and research in the case that [Petitioner had] asked him to do, and [had] reviewed with [Petitioner] the discovery material provided by the government," and that he was "satisfied with his representation at [that] point."

(*Id.* at 54).

Birdsong further averred:

> I have had sufficient opportunity to discuss with my lawyer the facts and surrounding circumstances concerning the matters mentioned in the indictment. My lawyer has counseled and advised with me as to the nature and cause of every accusation against me. We have thoroughly discussed the government's case against me and my potential defenses to the government's case. My lawyer has explained each element of the crime charged to me and what the government would offer to prove these elements beyond a reasonable doubt.

(*Id.* at 51).

By signing the plea agreement, Birdsong also agreed that Mr. Brandon had "fully explained" the charges in the indictment, the rights that he was waiving by pleading guilty, that he had "consulted with" Mr. Brandon, and that he had "carefully reviewed every part" of his plea agreement with Mr. Brandon. (Crim. Doc. No. 28, Plea Agreement, 58, 60, 67).

At the change of plea, Birdsong stated under oath that he had spoken with Mr. Brandon about the facts that supported the charges, that counsel informed him what the government would have to prove for him to be found guilty, that they discussed potential defenses, and that Mr. Brandon had done all of the investigation that Birdsong had asked him to do. (Crim. Doc. No. 40, Plea Transcript, 118-119). Petitioner, at the time of the change of plea, was "satisfied with his representation so far." (*Id.*).

"Solemn declarations in open court carry a strong presumption of verity," and "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Where a federal court has scrupulously followed the required procedure for taking a plea under Fed. R. Crim. P. 11, as this court did here, the defendant is bound by his statements in response to that court's inquiry. *See Smith v. United States*, 542 F. Supp. 3d 755, 764 (M.D. Tenn. 2021). Birdsong at the time of the plea informed this court that his defense counsel had communicated with him, had advised him of the charges, had discussed potential defenses with him, and done all the investigation he had asked counsel to do. Birdsong's "present conclusory assertions do not come close to overcoming the presumption of verity or show that he was coerced into pleading guilty." *Id.*

Birdsong next claims that counsel was ineffective because he did not introduce evidence to support a downward departure under the federal sentencing guidelines based on Diminished Capacity or Birdsong's mental health history.

This claim is also without merit. Mr. Brandon discussed Birdsong's mental health at length in his sentencing materials. In his sentencing memorandum, Mr. Brandon described Birdsong's difficult childhood, arguing in part that these circumstances resulted in his becoming addicted to

13

drugs. Mr. Brandon also discussed the movant's mental health history. Counsel also mentioned that Birdsong is a talented musician. (Crim. Doc. No. 81, at 81-82, Sentencing Memorandum). Much of this information was also included in the presentence report. (PSR ¶¶ 101-112.) This court was aware of this information and took it into account at sentencing. Mitigating evidence was placed before this court through defense counsel's sentencing memorandum and through the pre-sentence report. Therefore, Birdsong has failed to show that counsel was ineffective at sentencing. *See Siebert v. Jackson*, 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).

Birdsong next claims that counsel was ineffective for failing to advise him that his prior convictions did not qualify him as a Career Offender under the sentencing guidelines.

Mr. Brandon in his declaration makes clear that at no point did he believe that Birdsong qualified as a Career Offender. He, in fact, persuaded the charging Assistant United States Attorney that his client did not qualify as a Career Offender as part of the plea negotiations. (See Doc. 12-1, at 84, Attachment A – Declaration of A. Brandon). Brandon also indicated that it was his common practice to attempt to determine as early as possible whether his client was a career offender or an armed career criminal and discuss that issue at some length with his clients. *Id.*

Per the PSR, the sentencing guidelines were 137-156. (PSR ¶ 123). This scoring was based upon a base offense level of 21. (Crim. Doc. No. 41, Sentencing Hearing, at 140-141). The negotiated plea agreement was for 108 months, which was 29 months lower than the low end of the guidelines based upon an offense level of 21. Birdsong pled guilty to a count of 18 U.S.C. § 924(c). If he were a Career Offender, pursuant to U.S.S.G. § 4B1.1(c)(3), Birdsong's sentencing guidelines would have been 262 to 327 months. As the Government states in its response, "it defies logic" to presume that counsel assumed that Birdsong was a Career Offender during the course of plea negotiations, given that the binding plea agreement was for a below-guideline

14

sentence for a base offense level of 21. More importantly, Birdsong does not point to any evidence that he was incorrectly told he was a Career Offender by Mr. Brandon. Birdsong's claim fails because it was certainly clear from the record and the plea negotiations that counsel knew that Birdsong was not a career offender or armed career criminal and had adequately advised him on this issue. *See e.g. Hairston v. United States*, 664 F. App'x 485, 489-490 (6th Cir. 2016).

Birdsong further alleges that counsel was ineffective for failing to advise him of the risk factors of pleading guilty. As mentioned above, however, Birdsong indicated in his plea petition and on the record at the plea hearing that counsel advised him of the penalties for the crimes he was pleading guilty to and the rights he was relinquishing by pleading guilty. Counsel had also discussed potential defenses with Birdsong. Accordingly, Birdsong has failed to show that counsel was ineffective for failing to advise him of the merits of a guilty plea versus going to trial. *See Riley v. United States*, 592 F. Supp. 3d 645, 650 (M.D. Tenn. 2022).

Birdsong next claims that counsel was ineffective for failing to challenge the validity of Counts One and Four of the Indictment.

Birdsong first argues that counsel should have challenged Count One because there was no evidence of a conspiracy. With respect to Count One, the court notes that this count was dismissed as part of the plea agreement. In any event, Birdsong admitted, as part of the factual basis of the plea, during the course of [a] controlled buy …. [Petitioner] said: "I got that from my white boy in Athens, I got a good amount from *them*. This is the bottom of two zips. So I got one more gram left that my cousin is going to buy, and then I'm going to go back to the mother***ers from Nashville and it will be back sharded up." (emphasis added). The Sixth Circuit has affirmed conspiracy convictions where there was additional evidence beyond the mere purchase or sale, from which the knowledge of a conspiracy could be inferred. *United States v. Deitz*, 577 F.3d 672,

15

680 (6th Cir. 2009); *see also United States v. Gunter,* 551 F.3d 472, 482 (6th Cir. 2009)("While a buyer-seller relationship alone does not establish a conspiracy, evidence of repeat purchases can"); *United States v. Nesbitt*, 90 F.3d 164, 167 (6th Cir. 1996) (concluding that evidence of advanced planning and multiple transactions involving large quantities of drugs may show that the defendant was involved in the conspiracy and was not merely engaged in a buyer-seller relationship). "Evidence linking a defendant to the conspiracy includes 'repeated purchases of large quantities of a drug from a seller'; 'the method of payment for the buyer-seller transaction'; and 'evidence of an enduring arrangement.'" *United States v. Frazier*, 685 F. Supp. 3d 583, 630 (M.D. Tenn. 2023)(quoting *United States v. Wheat*, 988 F.3d 299, 308-09 (6th Cir. 2021)). Birdsong's factual basis strongly suggests that he had an ongoing arrangement to purchase drugs from other individuals for Birdsong to sell to other individuals.

Moreover, although it is true, as Birdsong states in his supplemental motion, that a confidential informant cannot be a party to a conspiracy, *See United States v. Rogers*, 118 F.3d 466, 477 (6th Cir. 1997), the confidential informants here were persons who purchased the drugs from Birdsong. Birdsong mentioned other persons that he was obtaining the drugs from that he could in turn sell to others. It also appeared from Birdsong's factual basis that this was an ongoing business. There is no indication that the government charged Birdsong was conspiring with the informant in this case. There was no valid basis for counsel to seek the dismissal of Count One.

Birdsong argues that counsel should have sought the dismissal of Count 4 on a number of grounds.

First, Birdsong argues that the sale of the gun did not constitute "use" of a firearm during the commission of a drug trafficking offense. The indictment, however, did not charge "use" of

16

the firearm, but that Birdsong "knowingly possess[ed] a firearm in furtherance of a drug trafficking crime." (Crim. Doc. No. 1, Indictment, 1).

In *United States v. Watson*, 552 U.S. 74 (2007), the Supreme Court held that receiving a firearm in exchange for controlled substances does not constitute "use" of the firearm during and in relation to a drug trafficking crime within the meaning of 18 U.S.C. § 924(c)(1). This is not what happened in Birdsong's case. The movant admitted during the guilty plea that he sold a confidential source methamphetamine and a semiautomatic pistol during the course of the same transaction. (Crim. Doc. No. 40, Plea Hearing, 129). The contemporaneous sale of a firearm and controlled substances, which happened here, is a violation of 18 U.S.C. § 924(c). *See United States v. Henry*, 819 F.3d 856, 866 (6th Cir. 2016)(citations omitted); *United States v. Rivera*, 502 Fed. App'x 554, 557-58 (6th Cir. 2012).

Birdsong also claims that Count Four should have been challenged because the firearm sold was neither loaded nor operable. A firearm need not be loaded or operable in order for a violation of 18 U.S.C. § 924(c) to have occurred. *See United States v. Bandy*, 239 F.3d 802, 805 (6th Cir. 2001) (quoting with approval other circuits' conclusions that firearm need not be loaded).

In his supplemental motion, Birdsong elaborates on his argument that counsel was ineffective for failing to challenge Count 4 by citing to the Supreme Court's ruling in *Bailey v. United States*, 516 U.S. 137 (1995). The Supreme Court has expressly overruled *Bailey*. *United States v. O'Brien*, 560 U.S. 218, 232–33 (2010) (discussing the statutory amendment known as the "*Bailey* fix"). As caselaw makes clear, the Government can now prove a violation of 18 U.S.C. § 924(c)(1)(A)(i) by either showing use of a firearm in connection with, or possession of a firearm in furtherance, of drug trafficking. Either one is an independent basis for the conviction of the defendant.

17

Birdsong next claims that counsel was ineffective for failing to challenge Counts 4 and 5 for being duplicitous. A duplicitous indictment charges separate offenses within a single count. *United States v. Anderson*, 605 F.3d 404, 414 (6th Cir. 2010). Count Four charged Birdsong with violating 18 U.S.C. § 924(c), possession of a firearm in furtherance of a drug trafficking crime, and Count Five charged violation of 18 U.S.C. § 922(g), felon in possession of a firearm. Neither Count charges separate offenses within the single count. Therefore, a motion challenging either count as duplicitous would have been meritless.

In his supplemental motion, Birdsong alleges that his counsel was ineffective for not filing a motion to challenge Count One or Four of the Indictment as being vindictively changed to "manipulate and coerce" him into accepting the plea agreement. To prove a claim for pretrial prosecutorial vindictiveness, a defendant must independently "establish[ ] [that] he exercised a protected right, the prosecutor has some 'stake' in deterring the petitioner's exercise of his right[,] the prosecutor's conduct was somehow 'unreasonable[,]' and there was as an intent to punish." *See United States v. Rosse*, 716 F. App'x 453, 458–59 (6th Cir. 2017) (citing *Bragan v. Poindexter*, 249 F.3d 476 (6th Cir. 2001)). Birdsong's claim is without merit because he points to no facts to support such a claim.

In conclusion, none of Birdsong's challenges to his indictment has any merit. Accordingly, counsel was not ineffective for failing to challenge the indictment. *See United States v. Tunstall*, 456 F. Supp. 2d 940, 943 (S.D. Ohio 2006).

Birdsong next contends that counsel was ineffective for failing to review the pre-sentence investigation report (PSR) with him. He is not entitled to relief on this claim because it is conclusory and unsupported. A review of the sentencing transcript shows that Birdsong stated on the record that he had read the PSR prior to sentencing and that he felt that he understood it. (Crim.

Doc. No. 41 at 4). Moreover, even if this court were to assume that trial counsel did not review the pre-sentence report with him, Birdsong would not be entitled to relief because he failed to show that he was prejudiced by counsel's alleged failure to review the report. *See Smith v. Woods*, 505 F. App'x 560, 568 (6th Cir. 2012).

Birdsong finally alleges that counsel was ineffective for failing to appeal his case to the Sixth Circuit. "[C]ounsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (e.g., because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000). "[A] lawyer who disregards specific instructions from a defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Regalado v. United States*, 334 F.3d 520, 524-25 (6th Cir. 2003). "[E]ven when a defendant waives all or most of his right to appeal, an attorney who fails to file an appeal that a criminal defendant explicitly requests has, as a matter of law, provided ineffective assistance of counsel that entitles the defendant to relief in the form of a delayed appeal." *Campbell v. United States*, 686 F.3d at 360.

Counsel in his declaration indicated that he did not file an appeal because (1) Birdsong had waived his right to appeal as part of the appeal, and (2) did not request counsel to file an appeal. (See Doc. 12-1, at 88-89, Attachment A – Declaration of A. Brandon). Moreover, Birdsong stated at sentencing "I believe I was sentenced fairly and I appreciate your accepting the plea." (Crim. Doc. No. 41 at 9). Birdsong is not entitled to relief on his claim because he failed to show that he requested his counsel to file an appeal. *See Richards v. United States*, 301 F. App'x 454, 457 (6th Cir. 2008).

The court has carefully reviewed Birdsong's motion, his supplemental motion, the government's responses, and the record in both this action and Birdsong's underlying criminal case. Birdsong has not shown that "the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). The court therefore finds that Birdsong is not entitled to the relief requested in his Section 2255 motion.

## IV. Conclusion and Order

As explained herein, Birdsong's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 is **DENIED**. This action is **DISMISSED**.

Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."

Because jurists of reason would not disagree with the resolution of Birdsong's claims, the court **DENIES** a COA. However, Birdsong may seek a COA from the Sixth Circuit.

It is so **ORDERED**.

_____
Aleta A. Trauger
United States District Judge

20

Case 3:22-cv-00020   Document 22   Filed 02/11/25   Page 20 of 20 PageID #: 167